UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-188-FDW

| JAMES C. McNEILL, | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | **ORDER** |
| FNU JHONSON, et al., | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the Court on initial review of *pro se* Plaintiff's Complaint, (Doc. No. 1). Plaintiff is proceeding *in forma pauperis*. See (Doc. No. 8).

**I.    BACKGROUND**

*Pro se* Plaintiff has filed a civil rights suit pursuant to 42 U.S.C. § 1983 for incidents that allegedly occurred at the Lanesboro Correctional Institution.[1] He names as Defendants Lanesboro Correctional Officers FNU Jhonson, FNU Grahmn, FNU Lane, and FNU Morrison, Lieutenant FNU White, Registered Nurse Jackie Yang, Disciplinary Hearing Officer Alfred Williams, Correctional Housing Unit Manager William Horne, and Correctional Superintendent Jhon Herring.

Construing the Complaint liberally and accepting it as true, Plaintiff has been diagnosed for decades with chronic pain ailments including lower back pain, knee pain, foot pain, degenerative disc disease, degenerative joint disease, and nerve pain. On October 27, 2017, Plaintiff was only given one dose of pain medication and discovered that "the nurses" had

---

[1] Plaintiff's address of record is at the Scotland C.I.

1

carelessly allowed his prescription to expire without being renewed. (Doc. No. 1 at 3). Plaintiff's pain became so severe that he declared a medical emergency at around 6:40 PM. Plaintiff was not taken out of his cell until about six hours later. Correctional Officer Morrison handcuffed Plaintiff with a black box and waist chain at 2 AM on October 28, 2017, and escorted Plaintiff to the holding cage on the Anson Unit where he sat in pain for another 40 minutes. Morrison finally escorted Plaintiff into the Anson Unit medical station.

As Plaintiff was entering the station and getting seated, Nurse Yang was leaving for Richmond Unit, leaving Nurse Erica Leach at the medical station. Correctional Officer Grahmn came inside the station from his assigned unit on Richmond and began conversing with Morrison. Leach said that Nurse Toni Hare had to let them go ahead and give him the medication for the rest of the weekend until Dr. Haynes could come back to work and rewrite the order. While Plaintiff and Leach were discussing the expired prescription, Leach was trying to pull up the expiration date but she was having trouble with her computer. When Nurse Yang came back into the medical station, Leach asked for her help with Plaintiff's prescription order that had expired. Instead of helping Leach, Yang began shouting at Plaintiff for looking at his medical information on the computer screen, shouting "No he is not here to check on his medicine!" (Doc. No. 1 at 7). Correctional Officer Jhonson entered the medical station with Yang. Correctional Officer Lane was outside the medical station door and Correctional Officer Grahmn was inside the station with Morrison. Plaintiff responded to Yang by telling her that he came to medical for pain relief and check on the status of his pain medication and that, because all the information on the computer screen concerned him, he should have access to that information. Yang began shouting and threatening to "put [Plaintiff] out." (Doc. No. 1 at 7).

After Yang threw Plaintiff out of the medical station, Morrison grabbed Plaintiff's arm but

2

was unable to escort Plaintiff because Graham and Jhonson came towards Plaintiff and began grabbing and savagely snatching Plaintiff, jerking and shoving him out of the medical station as he was fully restrained and put up no resistance. Jhonson "took charge" while the others crowded around and egged him on "like a thirsty mob fiending to see blood and guts." (Doc. No. 1 at 7). Jhonson, who is six feet tall and weighs 250 pounds, threw Plaintiff into the wall, slamming his head so hard that Plaintiff almost lost consciousness. In full view of the surveillance camera, Correctional Officers Grahmn, Lane, and Morrison, and "Nurses" looked on as Jhonson wrapped both hands around Plaintiff's throat and began savagely choking him. (Doc. No. 1 at 8). Jhonson again threw Plaintiff into the wall and seemed frustrated that Plaintiff would not pass out. Jhonson began punching Plaintiff's face repeatedly, again choked him with both hands, and threw him into an empty sergeant's office. Grahmn, Lane, and Morrison followed him. There are a few others who video surveillance can identify as being "excited conspiratorial spectators." (Doc. No. 1 at 8).

Once inside the sergeant's office, Jhonson began assaulting Plaintiff with Grahmn, Lane, and Morrison egging him on. Jhonson choked Plaintiff on top of the sergeant's desk, slammed him to the floor and choked him with both hands, then began punching his face and head. No prison staff member tried to intervene even though Plaintiff was helpless to defend himself. Plaintiff never spit on anyone or attempted to like "defendant" falsely alleged. (Doc. No. 1 at 9). Plaintiff did not possess a weapon, attempt to reach into his pants, or try to spit.

The assault stopped when Sergeant Griffin came into the office and picked Plaintiff up off the ground. Plaintiff told them to take him to medical. Instead, they took him back to the Anson Unit medical station to Nurse Yang. Plaintiff was woozy and had "partial memory loss temporarily" and cannot tell who was present besides Griffin, Morrison, and Lieutenant White. (Doc. No. 1 at 9). Plaintiff's eye was already swelling and he had a cut on his face. He was dizzy

3

and had severe back pain. Yang had a "conflict of interest" so she did not treat Plaintiff professionally. (Doc. No. 1 at 10). She gave him an ice pack for his eye. Griffin and Morrison escorted Plaintiff back to his cell. His neck was swollen and he was still wheezing somewhat.

Plaintiff wrote a statement an hour later while he was still dizzy and "fighting head trauma." (Doc. No. 1 at 10). He was told the statement was for an incident report and Plaintiff' requested that video be reviewed for the blatant assault. Plaintiff requested that Herring view the video so that he could terminate the employment of all the staff who participated. However, he failed to take corrective action. Instead, he immediately promoted Jhonson to lieutenant and "helped to cover up" the assault. (Doc. No. 1 at 10).

Lieutenant White, the investigating officer, never read Jhonson's statement so Plaintiff never knew he was alleging that Plaintiff was attempting to reach into his pants for a homemade knife or was acting like he was going to spit on him. White and Jhonson came to Plaintiff's cell the night after the incident and only had a disciplinary rights form. He did not give Plaintiff an opportunity to write a statement or have witness statements. White said he was going to use Plaintiff's incident report statement from immediately after the incident. White did not read Graham, Morrison, Jhonson, Cane, Yang, or Leach's statements to Plaintiff. White did say, however, that he viewed the video and that the excessive force was blatant, and Jhonson could be seen viciously choking and punching Plaintiff's face while Plaintiff was handcuffed, chained, and acting non-aggressive. However, White still lied and helped cover up the malicious assault by recommending that Plaintiff receive bogus charges. Anson Unit Manager William Horne collaborated as charging officer on the bogus charges, by serving them on Plaintiff on November 3, 2017. The videotape footage exposes these lies and shows that the assault was unjustified. White, Horne, and Williams collaborated to cover up Jhonson's actions and save his job while

framing Plaintiff on bogus charges.

On November 8, 2017, Plaintiff pled not guilty at the disciplinary hearing before Disciplinary Hearing Officer Alfred Williams. Williams never read any statements or evidence and said that he was sending the disciplinary package back for video footage and dismissed Plaintiff without having a hearing on the charges. An hour later, a correctional officer brought Plaintiff an Offense and Disciplinary Report and Record of Hearing saying that Williams found him guilty and imposed solitary confinement and loss of privileges which extended his long-term punitive segregation. Williams states in the record that Correctional Officer Bookless wrote a statement that she witnessed Plaintiff being combative with medical staff and threatened to assault Jhonson with a homemade knife. Plaintiff also never requested a statement from Nurse Cherie, who does not work at Lanesboro, and Bookless was not working the night of the incident and therefore could not have made a witness statement. There was no hearing on the charges from Jhonson so it is impossible for Plaintiff to have stated what is contained in the Record of Hearing.

Plaintiff suffers daily pain and trauma from the assault both mentally and physically. His back pain and neck pain have become worse and he takes narcotic pain medication. He has blinding headaches, periods of blurred vision, nerve pain in his arms and thighs, and extreme lower back pain. His mental trauma includes nervousness, fear, anxiety, depression, and hopelessness.

Plaintiff seeks compensatory and punitive damages, and a change in prison policy such that any staff who fail to intervene when assault of a restrained inmate is occurring are immediately fired.

## II. STANDARD OF REVIEW

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or

malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a *pro se* complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief.

6

Id.

## III. DISCUSSION

**(1) Individuals Not Named as Defendants**

The Federal Rules of Civil Procedure provide that, "[i]n the complaint the title of the action shall include the names of all the parties." Fed. R. Civ. P. 10(a); see Myles v. United States, 416 F.3d 551 (7th Cir. 2005) ("to make someone a party the plaintiff must specify him in the caption and arrange for service of process."). Although *pro se* litigants are entitled to have their pleadings liberally construed, Haines, 404 U.S. at 520, "[d]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants," Pliler v. Ford, 542 U.S. 225 (2004).

The body of the Complaint contains allegations against individuals who are not named as defendants in the caption as required by Rule 10(a). This failure renders Plaintiff's allegations against them nullities. See, e.g., Londeree v. Crutchfield Corp., 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the compliant but who were served).

Therefore, to the extent Plaintiff intended to assert claims against individuals not named as Defendants, these claims are dismissed without prejudice.

**(2) Cruel and Unusual Punishment**

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," Helling v. McKinney, 509 U.S. 25, 31 (1993). A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious," Wilson v. Seiter, 501 U.S. 294, 298 (1991); see also Hudson, 503 U.S. at 5, and must result in the denial of "the

7

minimal civilized measure of life's necessities," Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The second requirement is subjective and requires that a prison official must have a "sufficiently culpable state of mind." Wilson, 501 U.S. at 297, 302-03; Hudson, 503 U.S. at 5, 8. An actionable deliberate indifference claim does not require proof that the plaintiff suffered an actual injury. Instead, it is enough that the defendant's actions exposed the plaintiff to a "substantial *risk* of serious harm." Farmer v. Brennan, 511 U.S. 825, 837 (1994) (emphasis added). The official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837; Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998).

**(a)** **Excessive Force**

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials who may not use excessive physical force against prisoners. Hudson v. McMillian, 503 U.S. 1, 1 (1992). "[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." Hudson, 503 U.S. 1, 4 (1992); see Wilkins v. Gaddy, 559 U.S. 34, 34 (2010). The "core judicial inquiry," is not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated ... whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Hudson, 503 U.S. at 9, 13–14.

8

The Fourth Circuit addresses a failure to intervene claim as a theory of "bystander liability" wherein there is "an omission to act...coupled with a duty to act." Randall v. Prince George's Cnty., 302 F.3d 188, 202 (4th Cir. 2002). A "bystander officer" could be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Id. at 204. However, if no excessive force is applied by the fellow officer, the officer witnessing the conduct "cannot be held liable under bystander liability for a failure to intervene." Howie v. Prince George's Cnty., 2009 WL 2426018 at *6 (D. Md. Aug. 5, 2009); see also Jarvis v. Securitas Sec. Servs. USA, 2012 WL 527597 (D. Md. Feb. 16, 2012).

Plaintiff alleges that Jhonson repeatedly choked, beat, and slammed him on the wall and floor. He appears to allege that Grahmn, Lane, Morrison, and Yang watched the attack but failed to intervene. These allegations are sufficient to state a claim for the use of excessive force and failure to intervene, which will be allowed to proceed against **Grahmn, Jhonson, Lane, Morrison, and Yang.**

### (b) Deliberate Indifference to a Serious Medical Need

To state a *prima facie* case of deliberate indifference to a serious medical need, a plaintiff must show that he had serious medical needs and that the defendant acted with deliberate indifference to those needs. Heyer v. United States Bureau of Prisons, 849 F.3d 202, 210 (4th Cir. 2017) (citing Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (internal quotation marks omitted). To constitute deliberate indifferent to a serious medical need,

9

"the treatment [a prisoner receives] must be so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), *overruled on other grounds by* Farmer, 511 U.S. at 825. However, mere negligence or malpractice does not violate the Eighth Amendment. Miltier, 896 F.2d at 852.

Plaintiff alleges that nurses carelessly allowed his prescription to lapse, that Morrison made him wait 40 minutes to be seen after declaring a medical emergency, and that Yang only gave him an ice pack after the beating due to a "conflict of interest."

None of Plaintiff's allegations are sufficient to pass initial review. Carelessness does not raise to the level of deliberate indifference so the nurses did not violate his rights by allowing his prescription to lapse. There is no allegation that Morrison, a non-medical correctional officer, knew that Plaintiff had a serious enough medical condition that a 40-mintue wait was too long, or that Morrison had any ability to speed his way to medical. Finally, although Plaintiff alleges that he and Yang had a conflict, he fails to explain how her provision of ice to treat his visibly swollen eye was grossly inadequate, or how her failure to provide more or different care deliberately ignored a serious medical need.

Therefore, Plaintiff's claim that various Defendants were deliberately indifferent to a serious medical need will be dismissed.

### (3) **Prison Discipline**

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. The first inquiry in any due process challenge is whether the plaintiff has been deprived of a protected

interest in property or liberty that was accomplished by state action. Tigrett v. Rector and Visitors of the Univ. of Va., 290 F.3d 620, 628 (4th Cir. 2002); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988). "Unless there has been a 'deprivation' by 'state action,' the question of what process is required and whether any provided could be adequate in the particular factual context is irrelevant, for the constitutional right to 'due process' is simply not implicated." Stone, 855 F.2d at 172.

Plaintiff appears to allege that his excessive force allegation was not adequately investigated and that he was not granted due process during the disciplinary proceedings.

Plaintiff did not have any right to have his excessive force allegations investigated. See generally DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 196 (1989) ("The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual.")); Mitchell v. Murray, 856 F.Supp. 289, 294 (E.D. Va. 1994) ("nor is there a fundamental right requiring prison administrators [to] investigate prisoner complaints."); see, e.g., Vinyard v. Wilson, 311 F.3d 1340, 1356 (11th Cir.2002) (arrestee had no constitutional right to internal investigation of excessive force claim); Savage v. County of Stafford, Va., 754 F.Supp.2d 809 (E.D. Va. 2010) (deputy sheriff's alleged failure to document and investigate arrestee's alibi did not violate due process). Therefore, to the extent that he suggests various Defendants failed to adequately investigate his excessive force allegations, this claim will be dismissed.

Plaintiff has stated a sufficient claim with regards to the disciplinary proceedings. He claims that staff members' statements were not read to him, that he was not given the opportunity to write or present his own statement, and that he was also not allowed to present witness

statements, and that he was not given a full hearing after the proceedings were "sent back" then reopened and concluded without his involvement. These allegations are sufficient to allege a plausible due process claim and will be permitted to proceed against White and Williams. However, Plaintiff's allegations that Jhonson and White lied, and that White, Horne, and Williams collaborated to "frame" Plaintiff, are barred. See generally Heck v. Humphrey, 512 U.S. 477 (1994) (state prisoner's claim for damages is not cognizable under § 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence" unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated); Edwards v. Balisok, 520 U.S. 641 (1997) (claim for declaratory relief and money damages based on allegations of deceit and bias on the part of state officials involved in disciplinary proceedings that necessarily imply the invalidity of the punishment imposed is not cognizable under § 1983).

Plaintiff's claim that he was denied due process with regards to his disciplinary proceedings will be permitted to proceed against **White and Williams**, and the remaining claims will be dismissed.

**(4)** **Conspiracy**

To establish a civil conspiracy under § 1983, a plaintiff must present evidence that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [plaintiff's] deprivation of a constitutional right." Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996); see Hafner v. Brown, 983 F.2d 570, 577 (4th Cir. 1992). An essential element in any conspiracy to deprive the plaintiff of his constitutional rights is an agreement to do so among the alleged co-conspirators. Ballinger v. North Carolina Ag. Extension Serv., 815 F.2d 1001 (4th Cir. 1987). Without such a meeting of the minds, the

independent acts of two or more wrongdoers does not amount to a conspiracy. Murdaugh Volkswagen v. First Nat'l Bank, 639 F.2d 1073 (4th Cir. 1981). Where the complaint makes only conclusory allegations of a conspiracy under § 1983 and fails to demonstrate any agreement or meeting of the minds among the defendants, the court may properly dismiss the complaint. See Woodrum v. Woodward County Okl., 866 F.2d 1121 (9th Cir. 1989); Cole v. Gray, 638 F.2d 804 (5th Cir. 1981).

Tto the extent that Plaintiff has attempted to state a civil conspiracy under § 1983, he has failed to adequately do so because his vague and conclusory allegations fail to allege a meeting of the minds. See, e.g., Wiggins v. 11 Kew Garden Court, 497 Fed. Appx. 262 (4th Cir. 2012) (general allegations that defendants entered into an agreement, without sufficiently alleging plausible grounds to infer such an agreement, failed to state a § 1983 conspiracy claim); Shelton v. Angelone, 148 F.Supp.2d 670 (W.D. Va. March 21, 2001) (dismissing conspiracy claim because plaintiff failed to allege that his alleged injuries resulted from any meeting of the minds between the defendants, or state any claim of constitutional proportions). Therefore, Plaintiff's conspiracy claim will be dismissed.

**(5)** **Supervisory Liability**

A state official can be in a § 1983 suit in three ways: in his personal capacity, his official capacity, or in a more limited way, his supervisory capacity. King v. Rubenstein, 825 F.3d 206, 223–24 (4th Cir. 2016). For personal liability, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Kentucky v. Graham, 473 U.S. 159, 166 (1985). In an official-capacity suit, however, "[m]ore is required:" the suit is "treated as a suit against the entity," which must then be a "'moving force' behind the deprivation," id. (quoting

13

Polk County v. Dodson, 454 U.S. 312, 326 (1981)); thus, the entity's "'policy or custom' must have played a part in the violation of federal law," id. (quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978)). Meanwhile, a supervisor can be liable where (1) he knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) his response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between his inaction and the constitutional injury." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

Plaintiff contends that he requested that Herring view the videotape so that the participating employees could be fired, but instead, he promoted Jhonson and helped to cover up the assault. Plaintiff does not allege that Herring was present at the time of the incident and therefore cannot be held liable for excessive force or failure to intervene. For the reasons already stated, Herring's alleged failure to view the video footage is not grounds for § 1983 liability. See § 2(a), *supra*. Nor does Plaintiff allege that any custom or policy of Herring's was the moving force behind the violation of his rights. Plaintiff's vague and conclusory allegations are insufficient to state a claim based on supervisory liability. Moreover, the relief Plaintiff seeks – that staff who participated in the excessive force incident be fired – is not available in this action. See Van Houten v. Gaskill, 2006 WL 749410 (D.Kan. March 22, 2006) ("whether to fire or demote an employee is a personnel issue beyond the jurisdiction" of the district court). Therefore, Plaintiff's claims against Defendant Herring are dismissed.

### IV. CONCLUSION

For the reasons stated herein, the Complaint will be permitted to proceed on Plaintiff's

excessive force and failure to intervene claims against **Grahmn, Jhonson, Lane, Morrison, and Yang,** and on his due process claim against **White and Williams**. The remaining claims are dismissed for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff may file a superseding Amended Complaint within 14 days in which he may attempt to add parties and cure the deficiencies identified in this Order.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's claims against **Grahmn, Jhonson, Lane, Morrison, and Yang,** for excessive force and failure to intervene, and against **White and Williams** for denial of due process survive initial review under 28 U.S.C. § 1915.

2. The remaining claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

3. Plaintiff shall have 14 days in which to file a superseding Amended Complaint in accordance with this Order and all applicable rules and procedures. If Plaintiff fails to file an Amend Complaint within the time limit set by the Court, this action will proceed on the original Complaint, (Doc. No. 1).

4. The Clerk is directed to mail a copy of the Complaint, (Doc. No. 1), and a new Section 1983 complaint form to Plaintiff.

5. **IT IS FURTHER ORDERED THAT** the Clerk of Court shall commence the procedure for waiver of service as set forth in Local Rule 4.3 for Defendants **Grahmn, Jhonson, Lane, Morrison, White, Williams and Yang,** who are current or former employees of NC DPS.

Signed: August 13, 2018

Frank D. Whitney
Chief United States District Judge